## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **ANGIE D. OWENS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:13-CV-01931-AJB** |
| **CAROLYN W. COLVIN,** | : | |
| *Acting Commissioner* | : | |
| *of Social Security,* | : | |
| | : | |
| **Defendant.** | : | |

## O R D E R   A N D   O P I N I O N[1]

Plaintiff Angie D. Owens ("Plaintiff") brought this action pursuant to

sections 205(g) and 1631(c) of the Social Security Act, 42 U.S.C. §§ 405(g) and

1383(c)(3), to obtain judicial review of the final decision of the Acting Commissioner

of the Social Security Administration ("the Commissioner") denying her applications

for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits

---

[1]     The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  [*See* Dkt. Entries dated 8/9/2013 and 8/14/2013].  Therefore, this Order constitutes a final Order of the Court.

("SSI") under the Social Security Act.[2]   For the reasons below, the undersigned **AFFIRMS** the final decision of the Commissioner.

## I.      PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on February 15, 2010, alleging disability commencing on June 1, 2009.  [Record (hereinafter "R") 53, 54].  Plaintiff's applications were denied initially and on reconsideration.  [R57, 58, 66-69, 70-73].  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and an evidentiary hearing was held on March 28, 2012.  [R27-52].  The ALJ issued a decision on May 17, 2012, finding that Plaintiff was not disabled.  [R13-21].  Plaintiff sought review by the Appeals Council, and the Appeals Council denied Plaintiff's request for

---

[2]      Title II of the Social Security Act provides for federal Disability Insurance Benefits.   42 U.S.C. § 401 *et seq*.   Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*., provides for Supplemental Security Income Benefits for the disabled.  Title XVI claims are not tied to the attainment of a particular period of insurance disability.  *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982). Otherwise, the relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI.  *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)).   In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI, although different statutes and regulations apply to each type of claim.  *See* 42 U.S.C. § 1383(c)(3) (establishing that the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI). Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations, they are equally applicable to Plaintiff's DIB claims, and vice versa.

2

review on April 15, 2013, making the ALJ's decision the final decision of the Commissioner.  [R1-6].

Plaintiff then filed an action in this Court on June 10, 2013, seeking review of the Commissioner's decision.  [*See* Docs.1, 9].  The answer and transcript were filed on September 29, 2014.  [Docs. 17-18].  On November 21, 2014, Plaintiff filed a brief in support of her petition for review of the Commissioner's decision, [Doc. 24], and on December 24, 2014, the Commissioner filed a response in support of the decision, [Doc. 25].  Plaintiff filed her reply brief on January 20, 2015.  [Doc. 28].  The parties agreed to waive oral argument, [*see* Dkt. Entry dated 4/27/2015]; however, Plaintiff filed supplemental authority on April 22, 2015, [Doc. 30], and the Commissioner filed a response on May 1, 2015, [Doc. 31].  The matter is now before the Court upon the administrative record and the parties' pleadings, briefs, and supplemental authority, and is accordingly ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.    STATEMENT OF FACTS

### A.    Background

Plaintiff was 41 years old on the alleged onset date of disability.  [R20, 114].  Plaintiff has at least a high school education, [R20, 154], and past relevant work as a child care teacher or preschool teacher, housekeeper, and nanny.  [R48].  Plaintiff

3

alleges disability due to hyperthyroidism and cardiomyopathy depression.  [*See* R154, 521, 527].

### B.    Medical Records

The medical record reflects that Plaintiff presented to the emergency room with atypical chest pain in June 2009.  [R258].  A stress test and a CT scan were performed.  [*Id.*].  The stress test was negative and the CT scan was negative for pulmonary embolism, but revealed a large thyroid nodule.  [R258-59, 267, 268].  Treatment of Plaintiff's hyperthyroidism was strongly recommended.  [R259].

Plaintiff went to the emergency room again in July 2009 with complaints of dizziness and headaches consistent with prior migraines.  [R378].  Plaintiff described her headache as pounding with photophobia, nausea, and dizziness when she walked around.  [*Id.*].  She reported that she did not take anything for it.  [*Id.*].  Her headache resolved with fluids and medication.  [R379].  It was noted that the likely inciting event was pharyngitis (strep throat).  [*Id.*].

In January 2010, Plaintiff was admitted into the hospital with complications from her hyperthyroidism.  [R311].  A chest x-ray was normal.  [*Id.*].  An EKG revealed no acute cardiopulmonary disease.  [R336].  Plaintiff admitted that she had been told that she has a thyroid disease, but never followed up.  [R311].  She was counseled regarding

4

the importance of medical compliance and given the name of an endocrinologist to follow up with.  [*Id*.].

In February 2010, Plaintiff followed up with endocrinologist Stephen Brandt for a consultation.  [R445].  In April 2010, in a follow-up visit, Dr. Brandt notified Plaintiff that tests confirmed that she has Graves disease.  [R444].  She reported feeling fairly well with no palpitations or vision changes.  [*Id*.].  Although Plaintiff reported that she had a heart attack, Dr. Brandt questioned the accuracy of this assertion as he was not sure that this had been confirmed.  [R446, 447].  Plaintiff saw Dr. Brandt again in June 2010 and she reported feeling much better.  [R466, 467].  Dr. Brandt also noted that, clinically, Plaintiff was doing better.  [R467].

Plaintiff presented again to the ER in July 2010 with complaints of intermittent chest pain associated with shortness of breath, lightheadedness, and palpitations.  [R441].  She reported that she had not had pain like that since January 2010.  [*Id*.].  Plaintiff reported that she was on medication to treat her hyperthyroidism, but accidentally left them out of town when she was on vacation and had been without them for one week, which was noted to explain her symptoms.  [R441, 442].

In a follow up with Dr. Brandt in August 2010, Plaintiff was in no acute distress and clinically she continued to do well.  [R455].  Because Plaintiff's pulse was well

AO 72A
(Rev.8/8
2)

controlled and the levels were good, Dr. Brandt recommended that Plaintiff stop the beta blocker from a thyroid standpoint.  [*Id.*].

In September 2010, Plaintiff underwent surgery for repair of an incarcerated left inguinal hernia.  [R484-85].

In April 2011, Plaintiff had a mental consultative examination with Debra Lewis, Ph.D.  [R504-07].  Plaintiff informed Dr. Lewis that she is not currently in, nor does she have a history of, mental health treatment.  [R505].  Plaintiff reported an onset of depression in 2009 and contributing factors include single parenting, no or insufficient income, losing her home to foreclosure, and becoming ill with a thyroid disease.  [*Id.*]. Dr. Lewis noted that Plaintiff endorsed the following symptoms of depression: depressing mood four days a week, anhedonia, weight loss, isolation, difficulty concentrating, low energy levels, insomnia, and difficulty making decisions.  [*Id.*]. Dr. Lewis diagnosed Plaintiff with Major Depressive Disorder, Single Episode, Moderate.  [R506].  Dr. Lewis reached the following conclusion:

> Ms. Owens appears able to understand and carry out simple instructions. However, her attention span is limited and she may need extra time to process information when trying to learn new tasks in a work setting.  She would likely have difficulty meeting production norms if tasks were not repetitive.  Her insomnia may make it difficult for her to adhere to a work schedule.  She appears able to get along with the public, coworkers and supervisors.  She is emotionally fragile and if she met with a stressor in

6

the workplace it appears she does not have adequate coping mechanisms in place to manage her reactions effectively. She would likely withdraw. Her prognosis is guarded as she is not receiving psychiatric treatment; however, she indicated a willingness to see a psychotherapist. If awarded benefits, she does not need help managing any funds she would receive.

[R507].

Subsequently, a psychologist from the Disability Determination Bureau ("state agency"), Steven Kaye, Ph.D., completed a psychiatric review technique and a mental residual functional capacity ("RFC") assessment. [R509-22, 523-26]. Dr. Kaye opined that Plaintiff would have mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence or pace. [R519]. Dr. Kaye opined that Plaintiff's allegation of depression is fully credible. [R521]. He gave moderate weight to Dr. Lewis' opinion that Plaintiff appears able to get along with public, coworkers and supervisors, as Plaintiff is depressed and socially withdrawn and therefore may have some moderate problems with social functioning. [*Id*.]. Dr. Kaye, however, gave great weight to the remainder of Dr. Lewis' opinion. [*Id*.]. Dr. Kaye further opined that Plaintiff can understand, remember and carry out simple instructions, she would fare best in an environment with a supportive supervisor and in relative isolation from the public and co-workers, and Plaintiff would fare best in a non-stressful setting where changes are

7

introduced gradually.   [R525].   However, Dr. Kaye opined that these were not substantial limitations.  [*Id*.].

In April 2011, state agency physician Carl Cooper completed a physical RFC assessment.  [R527-34].  Dr. Cooper opined that Plaintiff could occasionally lift fifty pounds and frequently lift twenty-five pounds; stand, walk, and sit for six hours in a workday; frequently climb ramps/stairs, stoop, kneel, crouch, and crawl; and occasionally balance.  [R528-29].  No other physical limitations were recommended. [R527-34].

In a follow up visit with Dr. Brandt in September 2011, Dr. Brandt recommended that Plaintiff increase the dosage of her medication.  [R548].

In November 2011, Plaintiff presented to the hospital with the chief complaint being complications from her Graves disease.  [R583].

In January and February 2012, Plaintiff was treated by David Stahura, DO, for an evaluation of hyperthyroidism.  [R565, 569].  Plaintiff reported no additional symptoms including denying that she has shortness of breath or insomnia.  [R565].

In a separate hospital visit in January 2012, Plaintiff was treated for headaches. [R577-79].  Although not presented before the ALJ, the record reflects that, after the ALJ decision was issued, in June 2012 Plaintiff was treated for recurrent headaches that

tend to last for four hours and tend to occur during the day. [R588]. Plaintiff reported having four to five headaches in the past month. [*Id*.].

### C.   Evidentiary Hearing Testimony

At the hearing, Plaintiff testified that her mother prepares meals for her and her daughter. [R41]. She further testified that she gets around by para-transit. [R42].

Plaintiff testified that she has episodes in which she becomes dizzy and passes out. [R42]. She further testified that she never really knew when the episodes would start, nor was she aware of how much time she was passed out. [*Id*.].

Plaintiff testified that in a typical day, she gets up at 5:00 a.m. to help her ten year old daughter get ready for school, however, sometimes she is not able to do it and her daughter is old enough where she can get ready by herself. [*Id*.]. Once her daughter is on the bus, Plaintiff takes her medicine, which makes her sleepy, and then she sleeps for three to four hours. [R42-43]. When she awakens, she rests and eats one of the meals that is already prepared and sometimes she is able to pick her daughter up from school. [R43].

Plaintiff assessed her pain in her neck and stomach at 9/10 without medication and 8/10 with medication. [*Id*.]. Once a week, Plaintiff may have a "good day," in which her pain can be as low as a six. [R44]. Plaintiff testified that she has Grave's

disease, for which the doctors have told her there is no cure and is controlled through medication, which in turn makes her sleep.  [*Id*.].  She related that she has tried everything, she went to the doctor all the time, and has been on several different medications.  [R44-45].

Plaintiff's friend, Chandra Favors, also testified on Plaintiff's behalf.  [R45-47]. Favors testified that she has known Plaintiff since school age and frequently helps out with her daughter, including picking her up from school, keeping her on the weekends, and taking her to the store.  [R46].  Favors further testified that when Plaintiff had her heart attack, she was around every day to take care of Plaintiff's daughter.  [R47].

The vocational expert ("VE") testified that a hypothetical person with Plaintiff's education and previous work experience, who could perform work at the light exertional level with the following limitations – occasional ladder, ropes, or scaffolds; frequent ramps or stairs, balancing, stooping, kneeling, crouching, and crawling; understand, remember and carry out simple instructions only; no more than casual contact with the public; only up to occasional contact with co-workers and only up to frequent contact with supervisors; and could not perform fast-paced production work – could not perform Plaintiff's past work, but could perform the job of assembler II in the lighting fixtures industry, assembler of small parts, and an inspector.  [R49-50].

The VE then testified that if the hypothetical person had the additional limitation that requires a minimum of two hours of recumbent rest in a workday, that person would not be able to perform work on a sustained basis.  [R50].

## III.   ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact and conclusions of law:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.   The claimant has not engaged in substantial gainful activity since June 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.   The claimant has the following severe impairments: Graves disease/hyperthyroidism, hypertension, headaches, cardiac dysrhythmia, hernia, and depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

. . .

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . .

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to

11

perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following limitations: the claimant can occasionally climb ladders, ropes, and scaffolds; frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; understand, remember and carry out simple instructions only; no more than casual contact with the public, occasional contact with co-workers, and frequent contact with supervisors; and no fast-paced production work.

. . .

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . .

7.   The claimant was born on June 13, 1967 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged onset date (20 CFR 404.1563 and 416.963).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a), 416.969, and 416.969(a)).

. . .

AO 72A
(Rev.8/8
2)

> 11.   The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2009 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[R15-21].

In support of the decision, the ALJ found that Plaintiff has mild restrictions in activities of daily living; moderate difficulties in social functioning; and moderate difficulties in maintaining concentration, persistence or pace.  [R16].

With regard to the RFC, the ALJ first discussed Plaintiff's allegations and the hearing testimony.  [R17-18].  The ALJ noted that Plaintiff testified that she felt that she was capable of returning to work in April 2011, but within two to three months, she realized she was not capable of working.  [R17].  Plaintiff testified that on a typical day, she wakes at 5:00 a.m., prepares her daughter for school and takes her medications. The ALJ noted that Plaintiff stated that her medications make her drowsy and she naps for three to four hours a day.  The ALJ further noted that Plaintiff eats meals prepared by her mother and she is sometimes able to pick her daughter up from school.  The ALJ also noted that Plaintiff stated that she has great pain in her neck and stomach throughout the day and rated the pain at a 9/10 in severity without medication and a 6-8/10 with medication.  The ALJ further noted that Plaintiff has episodes of dizziness and has blacked out.  [*Id.*].

13

The ALJ also discussed Favors' testimony that she keeps Plaintiff's daughter on weekends and usually picks her up from school, and after Plaintiff suffered a cardiac episode, she went to the hospital to assist her every day.  [R18].

The ALJ then considered the medical evidence.  [*Id.*].  The ALJ noted that Plaintiff went to the emergency room on June 23, 2009 complaining of chest pain and a CT scan of the chest was performed.  [R18].  The ALJ noted that the CT scan ruled out pulmonary embolism and a venous Doppler of the lower extremities was negative, however, a large thyroid nodule was noted in conjunction with hyperthyroidism.  The ALJ also discussed that in January 2010, Plaintiff went to the emergency room with complaints of palpitations and chest tightness that had lasted two weeks.  He noted that Plaintiff reported having heart attacks twice in the past, but that she had normal stress tests.  Plaintiff further admitted that she had been told that she had a thyroid disease in the past, but never followed up.  [*Id.*].

The ALJ noted that Plaintiff then began seeing an endocrinologist who confirmed Grave's disease.  The ALJ discussed Plaintiff's July 2010 treatment in which she complained of intermittent chest pain and shortness of breath and she admitted that she had not taken her medications as she left them at home when she went on a week long vacation.  The ALJ noted that Plaintiff's x-rays and cardiac enzymes were negative.

14

Dr. Wilson noted that Plaintiff's palpitations were probably due to non-compliance with thyroid medication. [*Id*.].

The ALJ also discussed Plaintiff's complaints of headaches in which she went to the emergency room in July 2009 and January 2012.  In July 2009, Plaintiff complained of headache and dizziness and the ALJ noted that her symptoms were consistent with a prior history of migraines.  The ALJ noted that her headache resolved completely after medication.  In January 2012, Plaintiff again went to the hospital complaining of a migraine.  [*Id*.].

The ALJ also noted that in January 2012, notes reflected that Plaintiff's impairments included cardiac dysrhythmia.  [R19].

The ALJ next discussed the opinion evidence.  [R18-19].  The ALJ first discussed the physical RFC assessment completed by Dr. Cooper in April 2011 in which Dr. Cooper opined that Plaintiff was capable of work at the medium exertional level and that Plaintiff could occasionally climb ladders, ropes, and scaffolds and frequently climb ramps and stairs, balance stoop, kneel, crouch, and crawl.  [R18].

The ALJ then discussed Plaintiff's April 2011 consultative psychological examination with Dr. Lewis.  [R19].  The ALJ noted that Plaintiff reported that she was prevented from working due to shortness of breath related to a thyroid issue.  It was

15

noted that Plaintiff was not in mental health treatment and did not have a history of mental health treatment.  It also was noted that Plaintiff endorsed depressed mood four days per week, anhedonia, weight loss, isolation, difficulty concentrating, low energy levels, and difficulty making decisions.  The ALJ discussed Dr. Lewis' opinion on Plaintiff's functional limitations which included that Plaintiff appeared able to understand and carry out simple instructions, however, her attention span was limited and she may need extra time to process information when trying to learn new tasks in a work setting; Plaintiff may have difficulty meeting production norms if tasks were not repetitive; her insomnia may make it difficult for her to adhere to a work schedule; Plaintiff appeared able to get along with the public, coworkers, and supervisors; and Plaintiff appeared emotionally fragile, and if she dealt with stress in the workplace, she may not have adequate coping mechanisms in place to manage her reactions effectively and would likely withdraw.  The ALJ noted that Dr. Lewis' prognosis was guarded as Plaintiff was not receiving psychiatric treatment.  [*Id*.].

The ALJ next discussed the mental RFC assessment completed in April 2011 by Dr. Kaye, who opined that Plaintiff could understand, remember and carry out simple instructions; would likely have difficulty understanding, remembering, and carrying out detailed instructions; could attend for two-hour periods; her concentration, persistence,

and pace was likely to decrease as the work demands became more complex; Plaintiff would fare best in an environment with a supportive supervisor and in relative isolation from the public and co-workers; and would fare best in a non-stressful setting where changes are introduced gradually.  The ALJ noted that Dr. Kaye noted that these were not substantial limitations.  [*Id*.].

Finally, the ALJ discussed Plaintiff's credibility in which the ALJ found Plaintiff and Favors' testimony to be less than fully credible.  As examples, the ALJ noted that many of Plaintiff's emergency room visits were as a result of Plaintiff's failure to follow up with a thyroid specialist or non-compliance with prescribed medication. The ALJ further noted that both of Plaintiff's headaches resolved with medication and Plaintiff did not follow up with a specialist or other doctor which is not characteristic behavior of an individual with a disabling condition.  The ALJ also noted that the record did not contain any opinions from treating or examining physicians indicating that Plaintiff had physical limitations greater than those determined in the decision. The ALJ stated that the RFC accounts for Plaintiff's mental issues.  [R19].

The ALJ gave some weight to the consultative examiner's opinion and the opinions of the state agency physicians.  [R20].

17

## IV.   STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner.  The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a).   The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274,

18

1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity

AO 72A
(Rev.8/8
2)

to perform.  *Doughty*, 245 F.3d at 1278 n.2.  To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists.  *Id.*

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy.  *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superceded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

## V.    SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner.  Judicial review of the administrative decision addresses three questions:  (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues.  *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980).  This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that

20

of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive. *Lewis v. Callahan*, 125 F.3d1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is

21

substantially supportive evidence" of the ALJ's decision.  *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).  In contrast, review of the ALJ's application of legal principles is plenary.  *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## VI.   CLAIMS OF ERROR

Plaintiff raises two issues in this appeal: (1) the ALJ failed to properly evaluate the medical opinions of Drs. Lewis and Kaye and failed to incorporate all the limitations they assessed into the RFC and hypothetical question to the VE, and (2) the ALJ erred in his credibility determination.  [Doc. 24 at 6].

### A.   Limitations

#### 1.   Arguments of the Parties

Plaintiff argues that the RFC and hypothetical question to the VE fail to address the following limitations: (1) Plaintiff's difficulty in adhering to a work schedule due to insomnia, as addressed by Dr. Lewis; (2) Plaintiff's inability to cope with stress, also addressed by Dr. Lewis; and (3) Plaintiff's need for a supportive supervisor, as noted by Dr. Kaye.  [Doc. 24 at 7-8].  As to the last point, Plaintiff argues that the ALJ only specified that Plaintiff can have "up to frequent contact with supervisors" which, she contends, says nothing about the quality of such contact.  [*Id*. at 8].  Plaintiff further

22

argues that, although Dr. Kaye noted that this is not a "substantial" limitation, whether a limitation is "substantial" is a determination that only the VE can make. [*Id*.].

Plaintiff additionally contends that the ALJ failed to properly evaluate the opinions of Drs. Lewis and Kaye specifically with regard to the aforementioned limitations, and that the ALJ failed to evaluate Dr. Lewis' finding that Plaintiff did not appear to be exaggerating her symptoms. [*Id*. at 9-10]. Plaintiff also challenges the weight the ALJ assigned to the opinions of Drs. Lewis and Kaye as Plaintiff argues that more weight should have been accorded them; instead, she argues, the ALJ did not articulate how the treatment notes or hospital records contradicted or did not support their opinions and the ALJ's credibility determination was defective. [*Id*. at 10]. Plaintiff also argues that the ALJ did not state with particularity the weight given to the opinions and the reason therefor. [*Id*. at 11 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987))]. Plaintiff further argues that the ALJ did not use the six-factor analysis under 20 C.F.R. § 404.1527(c) and as mandated by the Eleventh Circuit, and was thus reversible error. [*Id*. (citing *Cavarra v. Astrue*, 393 Fed. Appx. 612, 614 (11th Cir. Aug. 18, 2010); *Davis v. Comm'r of Soc. Sec*., 449 Fed. Appx. 828, 832 (11th Cir. Dec. 19, 2011))].

AO 72A
(Rev.8/8
2)

In response, the Commissioner argues that the ALJ was not required to discuss every element of an opinion where the decision is clear that the ALJ considered the opinion as a whole.    [Doc. 25 at 6 (citing *Adams v. Comm'r of Soc. Sec.*, 586 Fed. Appx. 531, 534 (11th Cir. Oct. 2, 2014))].  The Commissioner argues that the ALJ specifically considered Dr. Lewis' opinion that insomnia may make it difficult for Plaintiff to adhere to a work schedule and that she appeared not to have adequate coping skills for dealing with workplace stress. [*Id.* (citing [R19])].  The Commissioner argues, however, that Dr. Lewis' statement regarding Plaintiff's insomnia was based on Plaintiff's own subjective allegations of insomnia; Plaintiff's testimony that she wakes up at 5:00 a.m. does not suggest insomnia; and insomnia was not one of the reasons Plaintiff gave to Dr. Lewis as to why she could not work.  [*Id.* at 6-7]. The Commissioner further argues that Dr. Lewis' use of the word "may" indicates that she did not actually opine that Plaintiff could not adhere to a work schedule.  [*Id.* at 7].

The Commissioner also contends that Dr. Lewis did not opine that Plaintiff had an "inability" to cope with stress, only that she did not have adequate coping mechanisms to deal with work stressors.  [*Id.* at 7-8].  The Commissioner further submits that the ALJ accounted for this impairment by limiting Plaintiff to no more

than casual contact with the public, occasional contact with co-workers and frequent contact with supervisors.  [*Id*. at 8].

Regarding Dr. Lewis' opinion that Plaintiff did not appear to be exaggerating her symptoms, the Commissioner argues that this was not an opinion regarding Plaintiff's impairments, abilities, or limitations to work and the ALJ did not err in not specifically discounting the statement, because it does not impose any limitations beyond those the ALJ found in his RFC.  [*Id*. at 8-9].  Moreover, the Commissioner contends that the RFC is consistent with Dr. Kaye's opinion and that Dr. Kaye gave great weight to Dr. Lewis' opinion and findings; thus, the Commissioner argues, the RFC is not inconsistent with Dr. Lewis' opinion.  [*Id*. at 9-10].

Regarding Dr. Kaye's opinion that Plaintiff would fair best with a supportive supervisor, the Commissioner argues that, at the same time, Dr. Kaye noted that this was not a substantial limitation.  [*Id*. at 10].  The Commissioner contends that Plaintiff's argument that whether Plaintiff would fair best with a supportive supervisor was a determination that only the VE could make is without merit as the regulations specifically provide that this is a medical opinion that a psychologist can make. [*Id*. at 10-11].

25

Finally, the Commissioner argues that Plaintiff's contention that the ALJ did not sufficiently explain the weight given to the opinions of Drs. Lewis and Kaye is unavailing because the doctors' opinions do not conflict with the RFC. [*Id*. at 11]. The Commissioner further argues that the ALJ was not required to recite each factor and make an explicit finding as to each factor. [*Id*. (citing *Adams*, 586 Fed. Appx. at 534)].

In reply, Plaintiff argues that the Commissioner failed to address her cited decisions of *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), and *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981), which stand for the proposition that the ALJ must evaluate all obviously probative evidence, including pertinent elements of medical reports including reports from one-time examining doctors. [Doc. 28 at 2]. Plaintiff argues that there is no conflict between *Adams*, *Winschel*, and *Cowart*, which all state that an ALJ must evaluate evidence that is important. [*Id*. at 2-3]. Plaintiff further argues that the six-factor analysis is mandatory and thus, the ALJ's failure to discuss them was reversible error. [*Id*. at 4].

Regarding the limitation that Plaintiff has difficulty adhering to a work schedule, Plaintiff contends that Dr. Lewis did not base this opinion on Plaintiff's subjective account as medical and psychological professionals are trained to not accept a patient's claims at face value. [*Id*. at 5 (citing *Somogy v. Comm'r of Soc. Sec.*,

366 Fed. Appx. 56, 63 (11th Cir. Feb. 16, 2010)].   Plaintiff also criticizes the Commissioner's rationale that because Plaintiff gets up at 5:00 a.m. that means she does not have insomnia.  [*Id*. at 5-6].

Regarding Plaintiff's inability to cope with stress, Plaintiff argues that the Commissioner's arguments are not distinct from her own and thus the argument fails. [*Id*. at 6].  Plaintiff argues that Plaintiff's inability to cope is a functional limitation which is recognized by Social Security Ruling ("SSR") 85-15.  [*Id*.].  Plaintiff argues that the jobs the ALJ identified at step five are production jobs and maintaining a production pace can be stressful.  [*Id*. at 7 (citing *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004))].  Plaintiff claims that there is no support in the record that casual contact with the public, occasional contact with co-workers and frequent contact with supervisors adequately accommodates a patient with inadequate stress-coping mechanisms.  [*Id*.].

Regarding Plaintiff's need for a supportive supervisor, Plaintiff argues that the Commissioner has misstated her point on substantial limitation.  [*Id*. at 7-8].  Plaintiff argues that only a vocational expert, not a psychologist, can make the determination of whether supportive supervisors are readily available in the labor market.  [*Id*. at 8].

27

Finally, Plaintiff argues that Dr. Lewis' finding that Plaintiff was open and honest and did not appear to exaggerate her symptoms relates to her overall credibility and the Commissioner made no attempt to distinguish Plaintiff's citation to *McRoberts v. Bowen*, 841 F.2d 1077, 1079, 1081 (11th Cir. 1988), which Plaintiff argues requires ALJs to evaluate such findings.  [*Id*.].

## 2.    Discussion

The Court finds that substantial evidence supports the hypothetical question, the RFC, and the ALJ's step five determination that Plaintiff is not disabled.   The Court finds no error in the way the ALJ evaluated the opinions of Drs. Lewis and Kaye. Plaintiff argues that the ALJ failed to evaluate specific limitations, however, the decision specifically addresses each limitation that Plaintiff argues the ALJ failed to evaluate.  [R19].  Moreover, these limitations are not inconsistent with the RFC.

As to the "limitation" that Plaintiff's insomnia may make it difficult for her to adhere to a work schedule, the Court agrees that this is not a finding that it is impossible for Plaintiff to adhere to a work schedule or that it is inconsistent with the RFC.  The ALJ additionally relied on the opinion of Dr. Kaye, who greatly agreed with the opinion of Dr. Lewis and did not find that potential difficulty to adhere to a work schedule was inconsistent with his own opinion or the evidence of record.  [R521].  In fact, Dr. Kaye

28

cited directly to Dr. Lewis' opinion regarding Plaintiff's functional assessment and the only inconsistency Dr. Kaye found was that Plaintiff had a greater limitation in social functioning than that observed by Dr. Lewis. [*Id*.]. Moreover, Plaintiff does not cite to any other evidence in the record that Plaintiff has insomnia or to a medical opinion that Plaintiff would be unable to work due to insomnia. The medical evidence reflects that Plaintiff denied having insomnia as late as February 2012, [R565], and Plaintiff did not testify that she suffers from insomnia. She claimed to be sleepy throughout the day due to her medication, not insomnia. [*See* R42-45]. As such, substantial evidence supports the ALJ's determination not to specifically include this limitation in the RFC finding and the ALJ was not required to present this limitation to the VE.

Regarding Dr. Lewis' finding that Plaintiff does not have adequate coping mechanisms to deal with stressors in the workplace, the Court agrees with Plaintiff that maintaining a production pace can be stressful. [Doc. 28 at 7 (citing *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004)]. However, the Court concludes that the ALJ adequately accounted for Plaintiff's inability to cope with stress by incorporating a limitation into the RFC that Plaintiff cannot perform fast-paced production work and limiting Plaintiff's contact with the public. *See Lafond v. Astrue*, No. 6:12-CV-6046(MAT), 2013 WL 775369, at *12 (W.D.N.Y. Feb. 28, 2013) ("The ALJ

adequately accounted for Lafond's limitations in dealing with stress by restricting him to simple and repetitive tasks; no fast-paced production requirements; the necessity of making only simple decisions; and few, if any, changes in the workplace); *Chanbunmy v. Astrue*, 560 F. Supp. 2d 371, 379, 387 (E.D. Penn. 2008) (finding that the RFC adequately accounted for plaintiff's fair ability to deal with work stresses by restricting her to work that is as self-paced as possible, that is not on an assembly line and that does not mandate team work); *see also Schmidt v. Astrue*, 496 F.3d 833, 844-45 (7th Cir. 2007) ("The ALJ also limited Schmidt's work to jobs not involving high production goals, thus giving some credibility to Schmidt's stress claims."); *Sullivan v. Colvin*, 519 Fed. Appx. 985, 989 (10th Cir. Mar. 13, 2013) ("[T]he ALJ's RFC determination that Ms. Sullivan was limited to unskilled, supervised work with no regular public contact adequately addressed Dr. Hansen's medical opinion that Ms. Sullivan's gross mental status is within normal limits but that she is unable to tolerate stress due to her probably borderline personality disorder.").

Further, an ALJ need not specifically mention the limitation so long as the hypothetical implicitly accounts for the limitation and rules out the jobs associated therewith. *See Winschel*, 631 F.3d at 1180 ("[O]ther circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration,

30

persistence, and pace when the questions otherwise implicitly account for these limitations") (citations omitted); *Syed v. Comm'r of Soc. Sec.*, 441 Fed. Appx. 632, 635 (11th Cir. Sept. 22, 2011) ("[A]lthough the hypothetical question posed by the ALJ to the VE did not expressly include Syed's impairments, it implicitly accounted for them, and thus, was not improper.") (citing *Winschel*).  Courts have accepted low stress work to be defined as production that is not fast-paced or does not require quotas.  *See Dawson v. Comm'r of Soc. Sec.*, 468 Fed. Appx. 510, 514 (6th Cir. 2012) (finding that the hypothetical to VE which included limitation that Plaintiff be limited to low-stress jobs that did not involve teamwork, production quotas, or over-the-shoulder supervision was adequate and ALJ acknowledged doctor's observation that plaintiff was limited in his ability to tolerate stress and interact with others); *Piatt v. Colvin*, 80 F. Supp. 3d 480, 489, 495 (finding that Plaintiff's difficulty in dealing with stress was accounted for in the RFC which defined low stress work as "occasional decisionmaking, occasional changes in work setting, and tasks that do not require a production rate pace"); *Trauterman v. Colvin*, 1 F. Supp. 3d 432, 441 (W.D. Penn. 2014) (accepting "low stress work environment" to be defined as "not production pace work, but, rather, goal oriented work with only occasional and routine changes in the work setting.") (internal quotations omitted).  Moreover, the ALJ specifically stated that

31

Plaintiff's "susceptibility to stress" is reflected in the RFC.  [R19].  Accordingly, the Court finds that the ALJ did not fail to evaluate and incorporate this limitation.

Finally, the Court finds that the ALJ did not err in failing to include a limitation in the hypothetical or the RFC for a supportive supervisor.  Again the ALJ specifically considered this opinion and deliberately chose not to specifically include it in the RFC.  [R19].  Plaintiff points to no cases where this was held to be a requirement and the Court has found several cases where, as here, the limitation need not be included if substantial evidence otherwise supports the RFC.  *See Hambrick v. Astrue*, No. 09-CV-689-PJC, 2011 WL 651408, at *6 (N.D. Okla. Feb. 11, 2011) (ALJ was not required to single out the one sentence of the doctor's report referring to job placement assistance, supportive supervision and job coach, given extensive discussion of doctor's report); *Timm v. Comm'r Soc. Sec. Admin.*, No. 3:13-cv-01597-HA, 2014 WL 4724848, at *4 (D. Or. Sept. 23, 2014) (where doctor stated plaintiff needed supportive supervisor but also stated that plaintiff was able to keep appointments, manage behavior and interact with doctors, not error to include in RFC that plaintiff have supportive supervisor; "[t]he ALJ is the final arbiter in resolving ambiguities in the medical evidence, . . . , and resolved the ambiguities with regard to [doctor's] testimony in favor of not requiring that plaintiff have a supportive supervisor").  *See also Payne v.*

32

*Comm'r of Soc. Sec.*, 402 Fed. Appx. 109, 118-19 (6th Cir. Nov. 18, 2010) (affirming ALJ's omission of supporting supervisor where plaintiff's RFC was for low stress work); *but see Gibbons v. Colvin*, No. CV 14-2151-JPR, 2015 WL 2409254, at *6 (C.D. Cal. May 20, 2015) (finding that the ALJ committed reversible error by not assigning weight to opinions of physicians the ALJ did not reject and the ALJ failed to provide specific and legitimate reasons for discounting their findings, including a finding that plaintiff could accept instruction only from "supportive" supervisors).[3]

The Court also finds that the ALJ did not err in according some weight to the opinions of Drs. Lewis and Kaye and adequately explained his decision.  The ALJ explained that, in arriving at the decision, he relied on the treatment notes and hospital records.  [R20].  The regulations indicate that the factors must be considered, not that they need to be specifically articulated, 20 C.F.R. § 404.1527(c), and aside from arguing certain limitations the ALJ failed to incorporate, Plaintiff does not demonstrate how the ALJ failed to consider the factors.

Therefore, substantial evidence supports the ALJ's RFC determination and hypothetical question posed to the VE.

---

[3]     Plaintiff did not cite to this case or argue that the Court should adopt its findings and reasoning.

33

**B.      Credibility**

**1.      Arguments of the Parties**

Plaintiff argues that the ALJ's adverse credibility determination is erroneous. [Doc. 24 at 17-19].  First, Plaintiff argues that the ALJ failed to evaluate Dr. Lewis' conclusion that Plaintiff was open and honest, cooperative and engaged, and that Plaintiff did not appear to be malingering or exaggerating her symptoms.  [*Id*. at 17-18]. Second, with regard to the ALJ's statement that Plaintiff did not follow up with a specialist or comply with medication, Plaintiff argues that this was true only in the beginning, that Plaintiff eventually sought and maintained treatment with a specialist, and that there is no indication that Plaintiff failed to comply with the specialist's medication orders.  [*Id*. at 18].  Third, Plaintiff argues that the ALJ failed to consider that Plaintiff's alleged limitations are supported by her mother.  [*Id*.].  Finally, Plaintiff argues that the ALJ erred by implying that Plaintiff only had two headaches and ignores that Plaintiff was on medication for recurrent migraine headaches and that she reported that her headaches occur four to five times a month, each lasting four to six hours. [*Id*. at 18-19 (citing [R588, 590-91])].  Plaintiff also argues that these errors cannot be considered harmless.  [*Id*. at 19].

34

AO 72A
(Rev.8/8
2)

In response, the Commissioner argues that the ALJ properly evaluated Plaintiff's credibility. [Doc. 25 at 12-16]. The Commissioner contends that once Plaintiff began treatment with a specialist, the records indicate that Plaintiff had few further difficulties and that she reported that she was feeling fairly well. [*Id*. at 13 (citing [R444, 446, 452, 455, 467, 469, 551-53])]. As such, the Commissioner argues, the ALJ did not error in finding that some of Plaintiff's symptoms were due to non-compliance. [*Id*.]. Regarding Plaintiff's headaches, the Commissioner argues that Plaintiff's cited evidence was not submitted to the ALJ, but was submitted to the Appeals Council and dated one month after the ALJ's decision. [*Id*. at 14]. The Commissioner further argues that the record indicates that the headaches began after the ALJ's decision. [*Id*.]. Thus, the Commissioner argues that the ALJ could not have erred in failing to consider evidence that was not before him in the record. [*Id*.]. Regarding the report from Plaintiff's mother, the Commissioner argues that the ALJ considered and discounted Plaintiff's credibility and thus implicitly rejected the duplicative allegations of Plaintiff's mother. [*Id*. at 15]. Finally, the Commissioner argues that the ALJ did not err in not considering Dr. Lewis' statement that Plaintiff did not appear to malinger or exaggerate her symptoms because the statement only related to the validity of the

35

consultative examination and the statement does not undermine the ALJ's other reasons for discounting Plaintiff's credibility.  [*Id*.].

In reply, Plaintiff concedes that the evidence cited relating to Plaintiff's headaches was not before the ALJ, however, Plaintiff argues that there was other evidence of Plaintiff's migraines that was before the ALJ.  [Doc. 28 at 9 (citing [R184-85, 187-88, 215, 293, 521, 566])].

In Plaintiff's Notice of Supplemental Authority, Plaintiff attaches two cases for the Court's review for the proposition that where a court finds that the ALJ has failed to properly evaluate medical or other evidence, the credibility finding is also invalidated.  [Doc. 30 at 1 (citing *Himes v. Comm'r of Soc. Sec.*, 585 Fed. Appx. 758 (11th Cir. Sept. 26, 2014); *Mohamed v. Colvin*, 1:13-cv-00995-AJB, *30-31 (N.D. Ga. Apr. 28, 2014)].  The Commissioner responds that the decisions cited by Plaintiff are non-binding, issued prior to the parties' briefs, and, in any event, the cases do not alter the outcome of the case.  [Doc. 31 at 1].

### 2.    Discussion

The Court does not find error with the ALJ's credibility determination.  The ALJ did not err in considering that Plaintiff was not compliant with seeking treatment or taking medication.  As noted by the Commissioner, and unrefuted by Plaintiff, the

AO 72A
(Rev.8/8
2)

records show that once Plaintiff was compliant, Plaintiff reported doing better. [R444, 455].

The Court also finds that any error in the ALJ's failure to discuss the third-party report of Plaintiff's mother to be harmless. As noted by the Commissioner, the allegations in the report are essentially the same as Plaintiff's, [*see* R233-34], and by finding Plaintiff not to be fully credible, the ALJ implicitly found Plaintiff's mother not to be fully credible as well. *Clyburn v. Comm'r Soc. Sec. Admin.*, 555 Fed. Appx. 892, 894-95 (11th Cir. Feb. 7, 2014); *East v. Barnhart*, 197 Fed. Appx. 899, 901 n.3 (11th Cir. Oct. 2, 2006).

The Court concludes that substantial evidence supports the ALJ's evaluation of Plaintiff's headaches. The ALJ found that Plaintiff's headaches were a severe impairment, [R15], indicating that the ALJ recognized that she had more than two headaches in a three year period. *See* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). However, the ALJ found that Plaintiff was not fully credible as to the limitations associated with her headaches as she only sought treatment for them twice and both times the headaches were resolved by medication. [R19]. Moreover, the ALJ noted that Plaintiff did not follow up with a specialist or other doctor regarding her headaches, which the ALJ found to be uncharacteristic behavior of an individual with

37

a disabling condition.  [R19].  Plaintiff does not challenge this finding.  Plaintiff cites to evidence to attempt to show that Plaintiff had more than two headaches, however, the medical record reflects that Plaintiff was only treated for headaches twice, as correctly noted by the ALJ, and the other evidence cited by Plaintiff were her own allegations in her disability applications, Dr. Kaye's recitation of Plaintiff's allegation from the disability applications, and a notation in the medical record that Plaintiff has a history of headaches.  [R184-85, 187-88, 215, 293, 521, 566].  Thus, substantial evidence supports the ALJ's credibility finding with regard to Plaintiff's headaches.[4]

Finally, as discussed above, the ALJ properly evaluated the medical opinions of Drs. Lewis and Kaye, including Dr. Lewis' finding that Plaintiff did not appear to exaggerate her symptoms, and their findings are not inconsistent with the RFC determination and hypothetical question posed to the VE.  Therefore, the supplemental authority submitted by Plaintiff does not apply.

Therefore, substantial evidence supports the ALJ's credibility determination.

---

[4]     Regarding the additional evidence presented to the Appeals Council that was not before the ALJ, Plaintiff concedes that this evidence was not before the ALJ and does not argue that the Appeals Council failed to evaluate the new evidence or that the matter should be remanded for the ALJ to consider the new evidence.  Therefore, any argument in this regard is abandoned.

AO 72A
(Rev.8/8
2)

## VII.   CONCLUSION

For the reasons above, the Court **AFFIRMS** the final decision of the Commissioner.

The Clerk is **DIRECTED** to enter final judgment in Defendant's favor.

**IT IS SO ORDERED and DIRECTED,** this the 10th day of September, 2015.

_____

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

39